(156 App. Div. 339.)

### BROWN et al. v. MILLSPAUGH.

(Supreme Court, Appellate Division, Second Department.   April 25, 1913.)

TRUSTS (§ 44*)—SUIT TO ESTABLISH—ACCEPTANCE OF TRUST—EVIDENCE.

    In a suit to establish a trust, evidence *held* not to show that a devisee and legatee, taking the property of testator absolutely, accepted the trust sought to be imposed, as evidenced by an instrument executed by testator.

    [Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 66–68; Dec. Dig. § 44.*]

    Hirschberg and Rich, JJ., dissenting.

Appeal from Special Term, Orange County.

Action by Carrie T. Brown and others against Thomas H. Millspaugh, individually and as executor of Henry C. Higginson, deceased. From a judgment for plaintiffs, defendant appeals.   Reversed, and new trial granted.

Argued before JENKS, P. J., and HIRSCHBERG, THOMAS, CARR, and RICH, JJ.

E. E. Roosa, of Newburgh, for appellant.

A. H. F. Seeger, of Newburgh, for respondents.

THOMAS, J.   Higginson was the owner of all the stock of the Higginson Manufacturing Company, except 150 shares, which, upon its incorporation, he gave to three of his employés, Millspaugh, Sanxay, and Many.   Millspaugh entered his employment at the age of 21, and at the time of Higginson's death was the secretary of the company personally and in the matter of business his confidant.   Higginson died on February 12, 1909, leaving a son under age and a widow.   His property was in his residence, and personal property largely in the stock of the company, all aggregating in value some $300,000.   He also left a will, later admitted to probate, by the terms of which all of his property was given absolutely to Millspaugh.   There was found in the bank at Newburgh, where he had lived, a deed and bill of sale of all his property to Millspaugh, and also a certificate for 1,850 shares of the common stock of the company, dated April 7, 1904, and also a certificate for 500 shares of the preferred stock of the company, dated April 7, 1904, in the name of Millspaugh, but these were not in the same envelope with the deed and bill of sale, although both of them bear the same date.   The certificates of stock bear the signature of Higginson, president, and Millspaugh, secretary; but it appears that the certificate for the common stock was not signed by Millspaugh till after the death of Higginson, when he took possession of all these papers.   There was also found a letter, signed by Higginson, dated April 7, 1904, the date common to the other papers, including the will, in which Higginson states:

"In order to carry out my wishes and to avoid legal complications I have turned my entire property over to you believing that you will carry out my wishes named hereafter."

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The first paragraph states:

"The intention of this will is that you are to have for your own 1,000 shares of the common capital stock of the Higginson Mfg. Co. which with the 5 shares you now have will give you absolute control. The remainder of my stock 850 shares common and 500 shares preferred are to go to Maynard under the following conditions."

Then follow conditions or provisions for selling stock and holding the avails in trust for the testator's son. Then follow requests that, "in case you are able to make a success of the business and the income derived will warrant it," Millspaugh make certain payments, and' among them "pay to Wm. R. Brown's 3 daughters $600 each per year in quarterly payments." It is to establish a trust in reference to this provision that this action is brought, and judgment has been given accordingly. This letter, among other things, says:

"You will find in my box in the Highland Bank the two certificates of stock of the H. M. Co. signed by me. When you have signed as Secy. the stock will be yours and you will find enclosed a letter to Sanxay instructing him to transfer the same on the books of the Co. at once."

Millspaugh took possession of the property, probated the will, occupied the testator's house, delivered no letter to Sanxay, took the stock from the bank, and made no revelation of the letter to the decedent's son until Judge Brown interposed; whereupon, under the date of November 8, 1909, he executed to William F. Cassedy an assignment of 500 shares of preferred stock and 850 shares of the common stock in trust for the testator's son, upon terms somewhat different from those expressed in the letter. The letter had this provision:

"10th. After you have read these instructions I request that you make such shorthand notes as you wish for your guidance and that these instructions, together with the letter to Sanxay, be destroyed. I hope that you will make a success of the business and believe that you have the ability to do so."

It is admitted that the condition of the business justifies the execution of the alleged trust in behalf of the plaintiffs. The sole question is whether Millspaugh accepted the trust. There is not a word of direct evidence that he knew of it before the testator's death, or that he accepted the gifts to him, subject to its execution, or that in any way he stated that he would execute the trust. But it is urged that he had knowledge of the trust before the testator's death and acquiesced in it. There is no evidence that he knew of it, but that is sought to be inferred by the confidential relations that existed between them and from his signature to the certificates, one made before and one made after the testator's death. I understand the argument to be that this signature on these 500 shares of the preferred capital stock, dated April 7, 1904, shows that Millspaugh knew of the letter which referred to two certificates of stock in the bank. But the letter refers to two certificates of stock that "will be yours." But in the safe were 1,850 shares of common and 500 shares of preferred, while the letter distinctly says that Millspaugh should have but 1,000 shares of common stock. Knowledge and acquiescence in, and thereby acceptance of, the trust is argued from the confidential relation. The inference would be a fair one if in any way it could be shown that the confidential relation extended to the letter or to the will or pertinent matters; but the

case is absolutely devoid of such evidence, or of any fact which would permit an inference favorable thereto. It is stated in the brief of the respondent that the appellant took possession of the deed and other papers found in the vault, and that he took possession of the estate thereunder, and that he claimed title to the property by reason of this conveyance. I find no evidence to sustain the statement. It is stated that Millspaugh followed the instructions in the letter by transferring the property to himself. But he had a right to transfer the stock to his name, because the will gave it to him absolutely, or to purchase or to sell. Lastly, it is argued that he accepted the trust by making provision for the son. Although that provision involved the stock indicated by the testator in the letter, yet the trust created was not the same, and the fact that Millspaugh was willing to give something to the son does not show that he thereby accepted the estate absolutely willed to him and subjected it to all the trusts mentioned in the letter. There is no pretense on the part of the respondent that there is any evidence of the acceptance of the trust, except that indicated by what respondent terms circumstantial evidence. But such evidence is altogether too indistinct to justify the claimed inference.

The judgment should be reversed and new trial granted, without costs of this appeal.

JENKS, P. J., and CARR, J., concur. HIRSCHBERG and RICH, JJ., dissent.